IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JENNIFER CASO and            :
JENNIFER REBOVICH,           :
                             :
              Plaintiffs,    :
                             :
     v.                      :        3:13-CV-02253
                             :        (Judge Mariani)
LUZERNE COUNTY and           :
MICHAEL VECCHIO,             :
                             :
              Defendants.    :

## MEMORANDUM OPINION

### I.    Introduction

Presently before the Court is a Motion for Reconsideration of our Opinion granting summary judgment (Doc. 59). For the reasons that follow, the Court will deny the Motion.

### II.    Factual Background and Procedural History

This action arose when two women and three men were furloughed from their positions as Luzerne County Probation Officers due to budget cuts. (*See* Mem. Op., Apr. 28, 2015, Doc. 57, at 2-3.) The women (but not the men) filed this lawsuit alleging gender discrimination against Luzerne County and Michael Vecchio, the Director of Probation Services who recommended that the five officers be furloughed.

On April 28, 2015, this Court granted summary judgment on behalf of the Defendants and dismissed the case. It did so for several reasons. First, it held that the Plaintiffs' employer was the Court of Common Pleas, not Luzerne County, and that the

lawsuit against the employer was therefore foreclosed under Eleventh Amendment immunity. (*See id.* at 11-14.) It then proceeded to hold that no evidence of record indicated that Luzerne County acted as a "joint employer" sufficient to avoid Eleventh Amendment immunity and, indeed, that all record evidence indicated that the Court of Common Pleas was Plaintiffs' sole employer. (*See id.* at 15-24.) This by itself would be enough to justify summary judgment.

But the Court nonetheless went on to find that "[e]ven if Luzerne County could be considered, albeit counterfactually, to stand in some type of employment relationship to the Plaintiffs, summary judgment would still be appropriate on the gender discrimination claims, because Plaintiffs have failed to produce evidence that Defendants treated them differently due to their gender." (*Id.* at 24.) The Court engaged in a lengthy discussion demonstrating why Plaintiffs' gender discrimination claims would fail on their merits against Luzerne County and Michael Vecchio. (*Id.* at 24-40.) In the course of so doing, the Court noted that some of the support for Plaintiffs' gender-discrimination claims came from Jennifer Caso's deposition testimony. But the relevant parts of this testimony were subject to a grave defect: they consisted of Ms. Caso's attorney testifying for her client by offering Caso such leading questions as "And this is more grounds for gender discrimination because you as a female were never offered what these boys were offered, right?;" "Another act of discrimination, right?"; and "They never posted training so that all the employees have fair shots to get the training, right?" (*See id.* at 31-34.) Defendant objected to all of these leading questions

2

during the deposition. (*See id.*) The Court on summary judgment determined that the questions violated the Federal Rules of Civil Procedure and of Evidence and sustained Defendants' objections. (*See id.* at 34-36.) It stated that much "of the excerpted testimony is simply Caso confirming her counsel's 'questions' without Caso providing any independent testimony of her own. As a result, rather than Caso recounting her observations—the proper purpose of a deposition—Plaintiffs' counsel attempted to 'suggest answers to the witness' and 'mold a legally convenient record.'" (*Id.* at 35.) The Court then struck those portions of Caso's deposition testimony in which she responded to her counsel's leading questions. (*Id.* at 35-36.) Finally, the Court observed that "Plaintiffs' counsel has engaged in the same sort of inappropriate deposition questioning in other cases before the undersigned" and placed her on notice that if she persists in this conduct the Court may impose monetary sanctions. (*Id.* at 36.) The Court then proceeded to discuss other, independent reasons to reject Plaintiffs' claims on their merits.

After the Court issued its Opinion, Plaintiffs filed the instant Motion for Reconsideration. The Motion only challenges the Court's Opinion on the issue of striking deposition testimony. That is, Plaintiffs' argue (1) that because defense counsel noticed the Caso deposition, it was defense counsel that was charged with direct examination and Plaintiffs' counsel that was charged with cross-examination, thus making Plaintiffs' counsel's leading questions appropriate and (2) that the Court abused its discretion to rule "*sua*

3

*sponte*" on Defendant's deposition objections but not on others made by the Plaintiff. (*See* Pls.' Br. in Supp. of Mot. for Recons., Doc. 60, at 2.)

### III.   Standard of Review

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). A party seeking reconsideration must show at least one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

### IV.   Analysis

Though Plaintiffs do not specifically state which of the three bases for reconsideration they allege, the Court infers from their Motion that they allege the need to correct a clear error of law or fact or to prevent a manifest injustice. Nonetheless, their Motion fails, for several reasons.

To begin, all the portions of the Opinion to which Plaintiffs object were part of the Court's merits analysis. But the Court already stated that it only addressed the merits of the action as an alternative reason to grant summary judgment and that, in doing so, it was forced to assume "counterfactually" that Luzerne County stood "in some type of employment relationship to the Plaintiffs." (Doc. 57 at 24.) Thus, even if the Court reconsidered its merits

4

analysis in its entirety (which it will not do), the summary judgment opinion would stand unaltered on the separate and independent ground of Eleventh Amendment immunity.

Nor would even the merits analysis change if the Court were to reconsider its decision striking Caso's deposition testimony. Even if the testimony were not stricken as inadmissible, it does not follow that it would be enough to create a triable issue of fact on Plaintiffs' discrimination claim. Even if Caso's testimony were deemed admissible, all this would mean is that the Court would be able to consider the fact that Caso confirmed certain legal conclusions spoon-fed to her by counsel. Merely confirming one's own attorney's legal theories obviously does not create a material dispute based on facts of record sufficient to avoid summary judgment.

For these reasons, Plaintiffs' Motion for Reconsideration represents an exercise in futility. Granting it would not impact the Court's ultimate decision to grant summary judgment.

But the Motion is not only futile from a practical perspective; it also fails in substance. The Court now turns to the substantive bases of Plaintiffs' Motion.

As to Plaintiffs' first argument, the Court finds no relevance in the fact that Defendant happened to be the party to notice Caso's deposition. This happenstance does not affect the parties' relationships to their lawyers and does not require Plaintiffs' counsel to cross-examine her own client. "The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence . . . ." Fed. R. Civ. P. 30(c)(1). The

Rules of Evidence provide that "[o]rdinarily, the court should allow leading questions: (a) on

cross-examination; and (b) when a party calls a hostile witness, an adverse party, or a

witness identified with an adverse party." Fed. R. Evid 611(c)(2).

> Leading questions are permitted on cross-examination because the witness is
> often reluctant and resistant to respond directly. This is due to "not only the
> presumable bias of the witness for the opponent's cause, but also his sense
> of reluctance to become the instrument of his own discrediting." *Wigmore on
> Evidence* § 773. Yet, where the reason ceases, the rule must also cease.
> Thus, when an opponent's witness proves to be biased in favor of the cross-
> examiner, the danger arises that leading questions will avoid the complete
> truth, and such questions may be forbidden, *id.*; *Mitchell*, 213 F.2d at 956; *In
> re Rogan's Estate*, 404 Pa. 205, 171 A.2d 177, 181 (Pa. 1961), with the court
> treating the cross-examination as if it were on direct. *Weinstein's Federal
> Evidence* § 611.06(4); *Woods v. Lecureux*, 110 F.3d 1215, 1221 (6th
> Cir.1997).

*U.S. v. McLaughlin*, Crim. No. 95-113, WL 966014, at *2 (E.D. Pa. 1998). It is an ancient

and widely-accepted principle that the trial judge has wide discretion to determine whether

the circumstances justify the use of leading questions. *See St. Clair v. United States*, 154

U.S. 134, 150, 14 S. Ct. 1002, 1008, 38 L. Ed. 936 (1894); *Fattman v. Bear*, 249 Fed. App'x

956, 958 (3d Cir. 2007).

Here, nothing justifies Plaintiffs' attorney's use of leading questions. The deposition

was a straightforward matter of one party (Defendants) calling an adverse party (Caso). As

such, it was the defense attorney who was permitted to use leading questions under

Federal Rule 611(c)(2), despite the fact that he began examining Caso first. Plaintiffs'

attorney, by contrast, had no reason to believe that her own client would be biased against

her, and thus the justification for allowing leading questions from her never existed. This

should come no surprise to either party as the procedure of calling a witness as if on cross-examination is commonly employed in this District.

This ruling is in no way disturbed by Plaintiffs' citation to *Smith v. Logansport Community School Corp.*, 139 F.R.D. 637, 642 (N.D. Ind. 1991). In *Smith*, an Attorney Hasbrook represented certain Plaintiffs who sued two Co-Defendants, represented by Attorneys Agostino and Cook, respectively. Defense attorney Agostino noticed a deposition of one of the Plaintiffs and commenced what the Magistrate Judge's opinion called a "direct examination." *See Smith*, 139 F.R.D. at 641. After the so-called "direct examination," the other defense attorney Cook cross-examined the Plaintiff on behalf of his own client. *Id.* Following this cross, Plaintiffs' attorney Hasbrook instructed his client to stop answering questions and unilaterally terminated the deposition, based on what the Magistrate Judge called the "ill-founded" assumption that, because Hasbrook had no "cross-examination" for his own client, this terminated the deposition such that Agostino had no right to "re-direct" the Plaintiff from Cook's cross. *Id.*

It is this thin reed of authority—a twenty-four year old Magistrate Judge's opinion from the Northern District of Indiana based on facts wholly dissimilar to our own—that Plaintiffs argues supports the proposition that "the party noticing the deposition will commence with direct examination" and "[a]fterward, each other attending party may cross-examine" always and as a matter of law. (*See* Doc. 60 at 3-4.)

7

*Smith* alone cannot support Plaintiffs' sweeping conclusion. Most obviously, the *Smith* court only stated that the direct-cross-redirect order of examination is that "*customarily* followed during a deposition" and noted that "permissible variation[s] of the usual sequence of examination" exist. *Smith*, 139 F.R.D. at 642 (emphasis added). It did not say, as Plaintiffs imply, that the customary order must always apply, such that the noticing party is always the one charged with direct examination. Moreover, the actual order of examination in *Smith* occurred between co-defendants each examining an adverse party. As the Magistrate Judge stated, these co-defendants have "are different parties with differing interests." *Id.* It is therefore plausible that, given the contours of the actual *Smith* case, Agostino was in the position of conducting a direct examination and the other defense attorney Cook was in the position of conducting a cross-examination, even when the deponent was technically adverse to both. But these factual particularities cannot be generalized to Caso's case, a plain instance of one party deposing his adversary.

The Court recognizes that Smith does use terms like "direct examination" and "cross-examination" with some degree of ambiguity, which gives Plaintiffs at least a plausible toe-hold to assert their arguments. But the fact that one non-binding case exists which could arguably be twisted to support Plaintiffs' conclusion cannot override the much clearer statements of law in the Federal Rules of Evidence and Third Circuit precedent stated in the Court's original opinion. Thus, reconsideration on this ground is unwarranted.

8

Next, Plaintiffs argue that the Court erred by sustaining Defendants' objections when (a) Defendants never asked it to do so in the summary judgment briefs and (b) the Court did not likewise rule on other objections that Plaintiffs raised during the deposition. (*See* Doc. 60 at 5.)

The Court finds no merit in these contentions. Despite Plaintiffs' assertions to the contrary, the Court did not act *sua sponte* in ruling on Defendants' objections. The objections were properly raised during the deposition. The Court need not wait until Defendants reassert their objections in a summary judgment brief before it is permitted to rule on those already properly asserted. Because the objections were raised at the deposition, the Court did not act *sua sponte*.

Nor was it error to rule on Defendants' objections without also ruling on Plaintiffs' objections. When addressing a summary judgment motion, Court only rules on those objections necessary to resolving the matters before it. It is aware of no requirement in such cases that it either rule on all objections or none of them. Instead, the Court believes that its duty to secure the just and speedy determination of every action is best served by ruling on those objections which are relevant and dispositive to a summary judgment opinion and ignoring those which are irrelevant or non-dispositive.

Indeed, Plaintiffs only point to one objection that it believes the Court should have, but did not, rule on. (*Id.*) In its Opinion, the Court quoted Michael Vecchio's deposition testimony as follows:

9

> [A]s I stated earlier, we've had volunteers [for CTUF training certification]. It's been a process that's been in place for many more years since I've been doing this job. And where there's been a need for one there's been a volunteer to fill the slots. There's not been a need to post or request somebody to do that.

Q.   You were also asked whether or not any female, and in particular Ms. Caso or Ms. Rebovich-Guesto, ever volunteered to become certified to train.

> Did you or did anybody in the Luzerne County court system prevent either Ms. Caso or Ms. Rebovich-Guesto from volunteering to become a certified trainer?

> ATTY. POLLICK: Objection. Lack of personal knowledge.

A.   Well, certainly I never restricted them from volunteering or prevented them from volunteering.

(Doc. 57 at 30 (quoting Michael Vecchio Dep. at 82:7-25).) The Court cited this testimony for the proposition that no one—whether man or woman—was "offered" CTUF training, so that Plaintiffs' contention that "women were never offered" the training was immaterial. It stated that "Vecchio testified during his deposition that officers volunteered for the training" and cited the quoted testimony in support. (*Id.* at 29-30.) Plaintiffs' objection—that Vecchio has no personal knowledge of whether he himself or anyone else in the Luzerne County court system prevented Plaintiffs from becoming a certified trainer—even if sustained, would not undercut the rest of the quoted testimony that officers volunteered for the training without it being specifically offered to them. Thus, Plaintiff's objection was ancillary to the point the Court made, and a ruling on it was not necessary.

However, if the Court had been required to rule on the objection, it would have overruled it. Vecchio clearly has personal knowledge about whether he personally prevented the Plaintiffs from volunteering to become certified trainers. Therefore, the fact that the Court did not rule on this single objection makes no difference to its Opinion and does not warrant reconsideration.

## V.   **Conclusion**

For the foregoing reasons, Plaintiffs' Motion for Reconsideration (Doc. 59) is **DENIED**. A separate Order follows.

Robert D. Mariani
United States District Judge

11